It's been a long time. It has been, Robin. Nice to see you. Nice to see you. May it please the court. I'm Michael Weisman. I represent Mr. Greene and I'd like to reserve three minutes for rebuttal. You have it. I suppose I ought to start by telling you about Davila and why I still have a claim, a case. This case is not governed by Davila v. Davis because there has never been any review in any court, state or federal, of Mr. Greene's post-Gray Confrontation Clause claim. Let me ask you a question, though, because I think you're starting at the right point on Davila. In your reply brief, you closed with the statement, initial PCRA counsel's failure to raise the claim in state post-conviction can be remedied under Martinez contingent, of course, on the outcome in Davila.  Yes, it did. But as I was about to tell the court, the way that it was decided still leaves me an avenue or a path forward. And here's that path. The chief concern, this is laying the doubt of Davila, the chief concern addressed by Martinez was, quote, to ensure that meritorious claims of trial error receive review by at least one state or federal court. That's at page 206-7 of the opinion. Now, Davila did not permit review of a defaulted claim because, based on ineffective assistance of appellate counsel, because the court reasoned that in those circumstances, and virtually every time that's going to come up, there would have been review of that claim by the state trial court. So the state trial lawyer makes an objection or files his motion, raises the issue, loses in the state trial court. There's been at least that review. But there has been, there was review of the issue here. It was just before Gray. Yes, not post-Gray. So, I mean, obviously, I'm here in the first instance because of the intervening decision in Gray v. Maryland, which really changed the analysis for a Bruton violation based on the introduction of redacted co-defendant statements. But let's back up a little bit. Yes. You know, habeas has to be based upon a constitutional claim. Of course. Isn't it clear, given Ross, that there really is no constitutional right to counsel for discretionary appeals, such as his appeal to the Pennsylvania Supreme Court? Yes, except, right. Yes. So, can you, do you really have a constitutional claim? Well, I think under the circumstances here, where you have counsel who files, and it's accepted by the, files Allen Conner, it's accepted by the Pennsylvania Supreme Court. How does that make a difference? Well, there's a right to appeal. There's really only one level of appeal that has a constitutional right. That's in terms of the appointment of counsel. You have the right to appoint a counsel. But once the lawyer's on the case, and he's acting as counsel, is required to act under the Equal Protection Clause, and through process, which are the underpinnings of the right to counsel, I would submit that in these circumstances, that right to counsel continued up until the point that the cert advice was not given. The advice to seek certiorari was not given. To go back to DaVita, as the court says in DaVita that claims of ineffective assistance of the appellate counsel don't pose the same issues as Martinez because in a DaVita situation you would have had review. Here we've had no review, and that's what distinguishes it. Let's, you know, let's assume that Martinez would control and would allow this. You said that you relied to a great extent on Cox, and that Cox alerted you. Yes. But Cox says you have to be diligent in pursuing your Martinez claim, and you waited over two and a half years after Martinez came down and didn't pursue, you know, Martinez' claim. And I think that, you know, when you're looking at all the circumstances here, and of course Rule 60B, this court's rulings on Rule 60B require a multi-factor approach and a flexible approach, and while in many cases delay or lack of diligence might be fatal, it's just one of the circumstances this court and the district court needed to consider. I would submit that given what was to green profit in the district court, that he consulted as best he could, he was indigent, uneducated in the law, consulted with the law librarian in the prison he was at, which by itself is an act of diligence, kept abreast of the laws he was developing, saw petitioner after petitioner lose before Cox trying to obtain Martinez' review, and then once Martinez was decided, I'm sorry, once Cox was decided, he was in court pretty quickly. And, you know, I think that, I think I cited this in my reply brief, I mean, the Pennsylvania Supreme Court has recently recognized the realities of prison litigation in that setting. It's not easy. It's difficult. And, you know, what you said. Two and a half years is, I mean, maybe nine months, a year, but two and a half years is a pretty long time. Well, and 137 days after Cox. But Cox itself says the starting time starts at Martinez. Yes, and I agree. So how do you get by Cox's own pronouncement? Because Rule 60B is a vast reservoir of equity, and my client in this case has suffered injustice. And when you're applying equitable concerns, the timing of it, particularly, you know, this is complicated stuff. Well, you say he suffered injustice, but his co-defendant, Abdullah, did not prevail on the Gray claim. He was able to present. And I understand it was a different procedural context in that deference was given to the Pennsylvania Superior Court's decision. But who's to say that the Pennsylvania Superior Court on remand would not have come to the same conclusion in Green's case that they came to in Abdullah's? Yeah, I mean, I don't know how it was presented in that court, but I can tell you that the panel, the two-judge panel in majority in Abdullah at page 133 said the redactions raised, quote, legitimate constitutional concerns, and, quote, given the similarities between this case and Gray, the trial court would have been well-advised to require further redactions or to keep the confessions out altogether since it was trial of defendants in the group. But the court then applies equitable deference, which would not apply in this instance. So, you know, I was reading Abdullah again for the dozenth time this morning, and, you know, it's a very close case. And I think, you know, the issue that was really in controversy between the majority and the dissent was the inferential value or the inferential inculpatory aspects of the confessions. I have to tell you, this is unbelievable, this case, this redaction. These redactions are astounding. I mean, you literally have, say, you know, people picking out photographs of Kodafred and saying, yes, picture number seven is, and picture number eight was. I mean, it's almost comical. You know, a couple mysteries in this case. The one mystery is why the Supreme Court did what it did when it dismissed the grant of the writ as improbably granted. Yes. Do you have any speculative reasons as to why they did what they did? I mean, was it the Commonwealth's brief? That argued that the redaction was consistent with Gray? I mean, I don't know that. You know, this was so soon after Gray was decided, I would be speculating as to why they did what they did. But it was a reversal. I mean, they first, they ordered a briefing, then they said it was improbably granted. Yeah, I mean, I've seen that happen in cases. I would be speculating as to why that would have happened. But safe to say that it was a draw reversal. Okay. Let's talk about the PCRA. You acknowledge in the PCRA, well, no, maybe you don't acknowledge. Should counsel in the PCRA have raised the Gray question? And could they have raised the Gray question? I don't think he could have or she could have as a substantive claim, because like the EPA statute, the PCRA requires a retroactive change in the law to be declared retroactive. So at the time, Gray still has not been declared retroactive. So I'm not sure that would have been the claim or a successful claim. To my mind, and again, this is complicated stuff, to my mind, I believe that the proper claim was that appellate counsel didn't advise his client. I mean, to me, that is just shocking. It defiled the petition for writ of certiorari of the U.S. Supreme Court. And what makes this such an, I mean, among many things that makes this case so unusual, I mean, you have Justice Scalia a few years later saying he would have won. Obviously, he didn't know Justice Scalia was going to say that, but it just shows the strength of the claim. It's easy for him to say that. We have to take him as where? So, yeah, I guess I'd just like to end by pointing out that, you know, we're dealing with, you know, not to sound trite, a vast reservoir of equity. If this panel, if this court believes that my client has been denied review of a meritorious constitutional claim, then you should dip into that reservoir. And I don't think the amount of time is determinative as to whether he should get review. It's a factor. The judgment itself was not that old at the time he filed. He has a lay sentence without parole, correct? That's right. Exactly. It's a serious, it's not Cox, which is, well, Cox itself was a non-capital case, but related or in relationship to a capital conviction. If we agreed with you, where would we send this to? To the district court to resolve the merits of the Gray claim. I mean, look, I think this court could resolve the Gray claim, but I think what I'm asking for is to reopen the judgment. The judgment should be reopened. We should have briefing on the Gray claim, and I think we'll win. I think I've covered all my seconds to spare. Thank you, Your Honor. Thank you. Good afternoon. It pleases the Court. My name is Catherine Keefer, and I represent the appellees. We put aside the procedural complexities that have been touched upon regarding whether or not this is a successive petition or a proper 6TB. The claim for which Green ultimately seeks relief is the following. May he receive review of procedure defaults and ineffective assistance of post-appellate counsel claim via the Martinez exception to Coleman. This court in Norris told us that where a change in the law is not beneficial to a movement's position, the law does not even begin to support a Rule 6TB motion. The Supreme Court explicitly ruled in Zavillo that the equitable exception to Coleman created in Martinez goes no further than claims of trial counsel's ineffectiveness. It does not extend to appellate counsel's ineffectiveness, and it goes no further to cover post-appellate counsel's ineffectiveness. But under 6TB6, we can grant relief from the judgment for any reason that justifies relief. And we have a situation here where two different attorneys basically blew it, and he's never had his argument heard. Wouldn't that constitute extraordinary circumstances in this situation? I don't believe it would. The Supreme Court in Zavillo said that he didn't get relief when his claim had never been reviewed. So I don't see anything that makes this claim and this, you know, argument of extreme inequity any more strong than the one that was presented earlier. I think generally speaking, he is bringing a claim that this court has already reviewed on the law and the facts. The courts in Pennsylvania have already reviewed on the law and the facts. There's no material difference between what Abdullah brought and what Green is bringing. No court has found any of the four co-defendants in this case worthy of relief on this claim. There is no giant inequity. That's just a big game of smoke and mirrors. We assert that the claim is dispositively and fatally answered by the Supreme Court's recent decision in Zavillo. We have no further argument. I'm happy to answer any further questions you may have. But it's fairly open and shut as far as we're concerned. Well, that's what you say. But Mr. Wiseman does make at least some argument on the fact that there's a distinction here between Zavillo. Let's assume for a second Zavillo doesn't close the door on this case. Okay. I'm perplexed by why the Supreme Court of Pennsylvania decided that the writ had been improvidently granted. What had your office said in the briefing that may have led them to conclude that? This is now post-Gray. We're in a post-Gray scenario. We're trying to figure out what Gray says. And I'll grant you that it took a few years for everybody to understand the distinction between Gray and Bruton and Richardson. But what do you think it was that you said? Because that may be your very argument today if you went back. Right. So I think there are a couple of factors. The first would be that the law of the cases that was decided below was pre-Gray. The courts at the time and the attorneys dealing in the trial at the time could not be asked to anticipate that extension and change in the law. And so what they did was entirely proper at the time that they had to make that decision. And I would also point out that there's a particular difference between the cert process in the U.S. Supreme Court and the aliquotter process in the Pennsylvania Supreme Court. Unlike the U.S. Supreme Court, the real meat of the claim is not nearly as obvious early on in the process. And so IGs are not overall frequent. They are significantly more frequent in the Pennsylvania Supreme Court than they are in the U.S. Supreme Court because you don't really get into the meat until after you grant it. And at that point you realize, you know, whatever they may have realized, this has become a mere error review. That's not what we do here. Or this is just not something we're going to consider for a reason that was not obvious earlier in the process pre-briefing. So I think for both of those reasons, the IG is not particularly remarkable. I don't think it was them trying to, you know, avoid having to grant him relief. I think it was likely quite legitimate either based on the strength of the Commonwealth's brief or because they just didn't have the opportunity to really see the claim for itself earlier. I think maybe I misheard you, but I think that you said to hear that, well, the law when the case was tried was pretty gray, and what the redactions that were done in the case were adequate. But since this case was on appeal, there was a petition pending for allowance of appeal before the Pennsylvania Supreme Court when Gray was decided. Correct. So under the law of retroactivity, the Gray decision would be applicable to a pending appeal. Yes. Okay. I'm sorry. If there was a miscommunication there, I apologize. Yes, I agree with your statement. So we have to look at Gray. Yes. We have to look at what Gray said and what they did. So are you saying the redaction is accurate under Gray? And I know that's getting into the merits argument, but I'm trying to parse, trying to figure out what happened here. You know, that would be something I would be happy to write something for quickly for the court after the argument, but I would need to dig a little deeper into what we said in our briefing a decade ago, and I don't want to misspeak at this moment, so I would be happy to provide you with something later if that would be something the court would appreciate. Is this case any different than Abdullah? No. It's the same facts and the same law. Abdullah did not get relief. His two other co-defendants were barred from bringing the claim. If you want to talk about inequity, the inequity here among the four people who committed the crime would be if Green were granted relief on a procedurally defaulted claim that the states had no opportunity to review, while his three co-defendants were barred from bringing the claim. I'm trying to reason through how this would flow, how it would proceed. It would go back. It's an ineffective assistance of appellate counsel claim that would be reopened if we were to grant reopening. There would have to be a determination that he was entitled to effective assistance of counsel from a constitutional perspective, and then the familiar Strickland two-pronged standard applied. And if we were to find that he was denied, if it was ultimately determined that he was denied effective assistance of appellate counsel, then what would happen? We would argue it would go back to the very position where the error occurred. So he would, therefore, have the right to seek cert in the Supreme Court. Okay. It doesn't become a winning claim. It becomes an ability to do what he hadn't apparently had. We disagree that he had a right to do that. But if you were not to believe our position, then it goes back to where the error supposedly occurred. And that is in line with what Scalia actually said as opposed to what Green suggests. He said Scalia did not say he would win. Scalia said he would get review. He would likely get review, not that he would likely win, and that's a critically important distinction. Let me ask this question. I'm trying to get my dates. I'm sure my dates are correct here. In our case of Green v. Palkovich, which was the Third Circuit habeas case, would Judge Ambrose's dissent have been aided by Martinez if Martinez had been decided? I don't know that I'm familiar enough with his particular statements in that relation to answer your question thoroughly. I'm sorry. Well. I'd be happy if you could give me a little. Well, the dissent in that case was, the distinction was that the majority opinion in our court, written by Judge Smith, I believe, and affirmed by the Supreme Court, Right. was that the law that was clearly established was the law that was in place at the time the Pennsylvania Superior Court decided the case. Right. No, I don't believe it would. So. Now that I'm. What I'm saying is, would Martinez. No. Martinez gives you a new equitable ability to bring a claim. It does not change the EDPA standard of review. And if the claim had been reviewed by the state courts, then the standard under which it's reviewed does not change. All right. You answered my question. I'm sorry. You answered my question without being intimately familiar. Good. And I apologize for that. Okay. Again, there are a lot of complicating factors here. But I have heard nothing that changes the fact that the VILA, underneath all of the complicated procedure, absolutely controls. Do you concede that there could be an ineffective assistance of a pallet counsel claim based upon the failure to advise, in this case, Mr. Green to file a cert petition? No. He didn't have a right to counsel at all then. You can't be ineffective in a constitutional manner when you don't have right to counsel to begin with. So you're saying Ross would control that? Yes. Does the panel have any further questions? All right. Thank you so much. Thank you very much, Ms. Cooper. Just a few points, if I might. The commonwealth has said that the VA's claim was not reviewed. And, of course, the VA's is just the opposite. The VA's claim received review, which is what distinguishes it from Martina's that has never been reviewed. I was dull for not offering the court the procedural rule that I would ask you to apply in this case. So let me do that briefly. We would ask the court to apply Martina's since this is not the VA. Apply Martina's to the narrow circumstances. We're not opening floodgates here. I mean, this is such an unusual case that an intervening change in the law from the United States Supreme Court that arises after the last recent state court decision, but before the conviction became final, and, of course, that's our case, that has never received review due to the ineffective assistance of appellate counsel. That's the rule I would ask this court to apply. And do you agree that ultimately, if you were to prevail, it would be to give you an opportunity to file a cert petition? No. I mean, I don't know how this court could require the Supreme Court to hear a cert petition from that long ago. I think the answer is to let us have Merritt's briefing on the Gray claim. Merritt's review was part of the ‑‑ is part of the 60B analysis. So my opponent was not able to respond as well as give a fully informed response. Let me go back. Wouldn't Merritt's briefing on the Gray claim look just like Abdullah? No. Well, I mean, look, I don't know what that brief says, but the issues would be similar. My point about Abdullah is it's a non‑presidential opinion, and it's highly contentious, right? You have two judges who I would submit that that would require almost any bank review in this court  That's a very unusual ruling that they had. It's contrary to Gray. I think Chief Judge Smith certainly let us all know his views on that. I mean, that was a very unusual holding. All you have to do is look at the ‑‑ let me back up. I would take my shot at trying to convince a court that the redactions in this case are outlandish and they violate Gray. When we were in front of the district court, I made the opinion But it would be an Abdullah redo, but you predict it might come out differently. Yeah. If it were a precedential opinion, you couldn't say. Well, that would have a bigger problem, sure. And it may be an insurmountable problem. Yeah, this case has a lot of twists. But in the district court, I said to Judge Slomsky, I said, you know, the commonwealth has never said anything about the merits of the Gray claim. And he asked them flat out, you know, what's your position on the merits of the Gray claim? They said, it's merits. I mean, there's never been any joining of the issue on that. That's part of the inequity here, the injustice that we have. What I would submit is a clearly winning claim that's never been reviewed because of a Byzantine application of a bunch of, you know, You don't agree with Ross. What case establishes that at this level, at the level that he was, that he had a constitutional right? I don't have a case. Ross is a 40-year-old decision in the Supreme Court, which sometimes would be valid. But it's an old decision that addressed the question of whether states had to appoint counsel for cert. That's a very different question than when you have a lawyer already on the case acting as a lawyer should. But the reasoning in it would apply nonetheless. It talks about the difference between trial and appeals. And it seems to me it would apply, the reasoning would apply. And if there's no case to the contrary. Well, I mean, this court can find. I mean, this is not an edible analysis. You don't need a Supreme Court case to rely on. This court can find in the equities, as Your Honor said, you know, for any reason that justice requires. That this man did not get his proper review. But as underlying that, we would have to find as a matter of law that there is a right to effective counsel at this stage. That's just, that's not going to be an equitable finding. That would be as a matter of law. Yes, you're right. And I don't have, you don't have a case. Well, I have the due process clause that says, you know, well, you know, the due process clause. But applying that to the situation, you have a lawyer who's already on the case as a matter of constitutional right. And he just drops the ball. He just stops acting like a lawyer. You know, this doesn't ever get reviewed. Because I think as I pointed out in my briefing, these questions about, you know, my lawyer was ineffective for not seeking cert. I mean, the problem there is no one can ever show prejudice. Right? And so this question of whether you're entitled to counsel under these unique, unusual circumstances, I don't know if the case addresses it one way or the other. And so that's where I think, where I'm at on it. Thank you, Your Honor. I appreciate it. Thank you very much. Thank you very much.